WARWICK vs. MARLATT and others.

1. Though strict proof of the defence of usury is required, the weight of evidence will not be disregarded under that defence.

2. The purchaser of mortgaged premises at a sheriff's sale, may avail himself of the defence of usury against a prior mortgage, though he purchased subject to that mortgage.

3. An agreement between the holder of a usurious mortgage and the mortgagor, that, in consideration of a deduction allowed the latter by the former, in the settlement of certain debts due him from the mortgagor, the mortgage should be regarded as purged of usury, will not remove the taint so long as the mortgage remains in the same hands.

4. Such holder is not entitled to recover the amount actually loaned. The supplement of April 12th, 1864, applies only to contracts thereafter made.

On final hearing on pleadings and proofs.

*Mr. S. M. Schanck,* for complainant.

*Mr. F. Kingman,* for defendants.

THE CHANCELLOR.

This suit is brought to foreclose a mortgage given on the 10th day of October, 1860, upon land in Mercer county, by Benjamin Marlatt to Samuel F. Butcher, to secure the payment of $800, with interest, and assigned by the latter to the complainant, on the 5th of April, 1862. The defence is usury. The property was sold by the sheriff to the defendant, John Dawes, in July, 1872, under a foreclosure of a subsequent mortgage, the holder of this mortgage not being a party to that suit. At that sale the announcement was made that the property was sold subject to the mortgage now in suit, and Dawes was informed by the complainant, before the sale was made, that there was due upon the mortgage, $800 of principal, besides interest. The usury set up in the answer,

was the delivery by Marlatt to Butcher, pursuant to an agree-ment made at the time of lending the money, of a gold watch, of the value of $60, as a premium over and above the lawful interest for the loan. Marlatt's account of the transaction is, that Butcher, having agreed to lend him the money, came with the scrivener employed to draw the bond and mortgage, to Marlatt's house, for the purpose of completing the transac-tion; that after the papers had been drawn, the scrivener went out of the house and was absent for a few minutes; that during the scrivener's absence, Butcher told Marlatt that he had been offered $50 for the loan of this money, and added that he thought Marlatt ought to give him the amount which he had been offered for it. Marlatt says, that he replied to Butcher that he had not expected to pay extra for the loan of the money, as he was giving him a good bond and mortgage; to which Butcher returned, that he thought Marlatt ought to pay him as much as he had been offered for it, as he was in need of all the money he could get. Marlatt says, that Butcher then began to " talk off," as though Marlatt would not get the money unless he paid Butcher that amount for the loan of it; that Marlatt then told him he had made arrange-ments for the money, and he wanted it. Marlatt says, he pulled a gold watch out of his pocket and told Butcher he could spare that better than he could the money, and that if Butcher thought well of it, the watch was worth $60, he would let him have that for the loan of the money; that Butcher took the watch, looked at it, said it would " suit him first-rate," that it was the very thing he wanted, and said he would let Marlatt have the money if the latter would let him have the watch; that the watch would suit him as well as the money. He swears that the watch was cheap at $60; that it was an English gold lever watch, and that he gave it to Butcher and that Butcher received it under this agreement.

That on the occasion of this loan, a watch was delivered by Marlatt to Butcher, is admitted, but Butcher swears, that he did not receive it as a premium for the loan. His account of the transaction is, that before the negotiation for the loan,

Marlatt had bought a load of straw of him, between one hundred and fifty and two hundred bundles, which he had delivered on the premises of the latter, but for which he had not been paid ; that Marlatt never paid him for the straw until that day, and then while Butcher was at Marlatt's house, and after the bond and mortgage had been drawn, Marlatt jumped up, went out into the kitchen, as Butcher says he thinks it was, and got a watch and handed it to him ; that he asked Marlatt if the watch was for the straw, and the latter " nodded his head in a way to say, yes ; " that the scrivener had paid the money about that time or a little before ; that he handed the money to the scrivener and he paid it over to Marlatt about the time of the delivery of the watch. He says, he received the watch in part payment for the straw. In answer to the question " Was, or was not, that watch given to you for the loan of the money to Marlatt ? " he answers, " What he gave it to me for I do not know, but what I took it for I know, and it was for what I have told you." He admits in his cross-examination, that he never rendered Marlatt any bill for the straw, never gave him any receipt for it, and never asked him for a settlement, nor did Marlatt ever ask him for any. He further says, that he " expected, when Marlatt bargained for the straw, to let the straw go in with the money," and that he did not say anything to Marlatt, at the time the money was paid, about including the straw, and never spoke to him about the straw afterwards. On his re-examination, when asked to explain what he meant by saying he expected the straw to go in with the money, he said that he thought it would make the bond and mortgage a little larger. Marlatt swears he has no recollection that Butcher brought him the straw previous to the loan of the money, and adds, that he does not think he ever had any dealings with Butcher previous to the transaction of the loan. Opposed to this is the complainant's testimony, that he recollects that Marlatt, in 1860, got straw of Butcher ; that it was long rye straw to tie up peach trees ; that Butcher brought Marlatt a load, the witness cannot tell how much it was,

Warwick *v.* Marlatt.

except that it was a load ; that he saw him drive over to Marlatt's farm with it and unload it there, and Marlatt used it for tying up young peach trees. He adds, that it was in the fall of the year, he thinks, but cannot say certainly. This testimony was taken in, June, 1873, about thirteen years after the alleged transaction to which it refers. The witness was in no way connected with Marlatt or his business. There appears to be no reason why he should have remembered such an occurrence at so great a distance of time, and under the circumstances, especially in view of his interest in the suit, the accuracy of his recollection may well be doubted. Butcher's testimony on the subject of the delivery of the watch, is manifestly, unworthy of credit. At best, it leads to the conclusion, that if a load of straw was delivered as he alleges, it was merely as a cover for the contemplated usury. It may be remarked in this connection, that his account of the purchase of the straw is, that on the day on which he promised Marlatt that he would let him have the money, Marlatt wanted to buy a load of straw of him ; that he wanted it when he got the money ; that he took the straw before he got the money, and that Marlatt said he would pay him for the straw the day he let him have the money. But, it is insisted by the complainant, that the evidence shows that the watch was not a gold watch of the value of $60, but was a galvanized watch of the value of only $3 or $4. Marlatt swears it was a gold watch, an English lever gold watch, a good timepiece ; that it was well worth $60, and that Butcher was satisfied with it, and said it would suit him as well as the $50 he had asked as a premium for the loan. Butcher never complained to Marlatt that the watch was not as it had been represented, and indeed, he does not swear that it was not a gold watch. In answer to the question, "What kind of a watch was that that Mr. Marlatt gave you?" he says, "*I believe* it was an oldish, galvanized watch, the plate commenced to wear off of it and it smelt pretty coppery ; it would'nt run but very little ; no dependence on the watch at all." When questioned as to its value, he says, "To some men it might

be worth $5, to deal with ; I don't think it was worth quite so much to me ; I have not the watch now ; John Norton got the watch ; I got an old sleigh for it, worth I suppose, $3 or $4." The only other testimony on this head is that of the complainant, who swears that Marlatt bought a watch of a peddler, for $13, which Marlatt said he traded to Butcher. The witness says, Marlatt was cheated in the watch. The inference is, that that was the watch which was delivered to Butcher. It is noteworthy that though, according to the testimony of Butcher, the watch was given to him in payment for goods sold and delivered by him to Marlatt, he never made any complaint of the fraud which had been practised on him in giving him a worthless watch in payment for those goods. And further, when Warwick proposed to buy this mortgage of Butcher, he sought and obtained a deduction of $50 from the amount due on the mortgage, in view of the usury now claimed to have been taken. It is true, strict proof of the defence of usury is required; but it is no less true that the court is not at liberty to disregard the weight of evidence under the defence of usury, any more than under any other. The usury alleged in the answer, appears to me to be proved. It is true, it is proved that on two different occasions, and in two different conversations since the commencement of this suit, one with Samuel F. Butcher and the other with his brother, Charles H. Butcher, Marlatt said the bond and mortgage were good and that he was making the defence to worry Warwick a little, but it is not to be forgotten that, before Warwick became the owner of the bond and mortgage, Marlatt told him of the usury to which Marlatt swears, and Warwick used the fact as the means of obtaining a deduction of $50, from the amount due on the mortgage when he purchased it from Butcher.

But it is urged by the complainant's counsel, that the defence of usury cannot avail Dawes, because he purchased the mortgaged premises at the sheriff's sale, subject to this mortgage. This position is untenable. *Brolasky* v. *Miller*, 1 *Stockt.* 807.

Again, it is insisted that if there was any usury in the loan which the bond and mortgage were given to secure, those instruments were purged of it by a settlement made in March, 1872, between the complainant and the then solicitor of Marlatt. That settlement was of the amount due to Marlatt on a certain decree of this court in his favor, and against Warwick. Under that decree a large sum of money was due from the latter to the former. Warwick, besides this mortgage, held certain judgments against Marlatt, which he had obtained by purchase for less than the amount due upon them. These he was willing to cancel, upon having the amount he had paid for them, with interest, (which was less than the amount due upon them by about $235,) allowed him in the settlement, provided this mortgage should, in consideration of such deduction, be regarded as purged of usury. This was agreed upon between the solicitor and Warwick; the latter put in the judgments at what they had cost him, with interest, and the former, in consideration thereof, endorsed upon the bond, under date of March 14th, 1872, an acknowledgment that there was then due on the bond, to the holder thereof, the sum of $800 principal, and signed this acknowledgment as attorney for Marlatt. In the settlement, Warwick was credited with the interest due on the full amount of the bond, up to April 1st, 1872.

The solicitor had no authority to agree with Warwick for his client, that the latter would waive the defence of usury, and besides, if he had had such authority, the bond and mortgage would not have been, by this agreement, and the payment or allowance in pursuance thereof, purged of the usury, so long as they remained in the hands of Warwick. This mortgage therefore, being still held by Warwick, is still tainted with usury, and there can therefore be no recovery upon it. The position taken by complainant's counsel, that the court might, if it found that there was usury in the loan for which the mortgage was given, give the complainant the benefit of the supplement of April 12th, 1864, to the act

against usury, cannot be maintained. It is enough to say, that the operation of that supplement is, by its terms, confined to suits upon notes, &c., thereafter to be made. The bill must be dismissed, with costs.